*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. V. LOCRICCHIO, Minor.

UNPUBLISHED
September 14, 2023

No. 359738
Macomb Circuit Court
Family Division
LC No. 2019-000270-NA

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Petitioner, the Department of Health and Human Services (DHHS), appealed by leave granted[1] the trial court's order ruling that it was not in the child's best interests to terminate respondent's parental rights.[2] After review of the record, this Court reversed the trial court's order and remanded the case to the trial court to enter an order terminating respondent's parental rights to the child and for further proceedings. *In re J V Locricchio*, unpublished per curiam opinion of the Court of Appeals, issued November 3, 2022 (Docket No. 359738). Thereafter, the Child Welfare Appellate Clinic at the University of Michigan Law School, on behalf of respondent, filed a motion for reconsideration because respondent did not have appellate counsel during the appeal. This Court granted the motion for reconsideration, vacated its earlier opinion, and ordered the matter remanded to the trial court for the appointment of an appellate counsel for respondent. *In re J V Locricchio*, unpublished order of the Court of Appeals, entered December 8, 2022 (Docket No. 359738). This Court further ordered that the matter be "rebriefed and submitted to a new panel for decision," and set the dates for the filing of briefs. *Id*. The trial court quickly entered an order that appointed appellate counsel for respondent. DHHS filed a new brief on appeal and

---

[1] *In re J V Locricchio*, unpublished order of the Court of Appeals, entered February 10, 2022 (Docket No. 359738).

[2] The child's mother voluntarily terminated her parental rights to the child and is not a party to this appeal.

respondent responded. Upon review of the record and the parties' arguments,[3] we conclude that the referee and the trial court clearly erred by finding that termination was not in the child's best interests. We vacate in part the trial court's October 27, 2021 order and remand this case to the trial court for further proceedings on whether termination of respondent's parental rights is in the child's best interests.

## I. BACKGROUND

On September 24, 2019, DHHS filed a petition to remove the then nine-year-old child from her mother's custody and terminate her parental rights. The petition included information that respondent had been incarcerated from November 2018 to July 2019 for domestic violence against the mother and that he was currently unable to care for the child. His visitation rights had been suspended and he admitted to relapsing on methamphetamine with the mother. Before the child was removed from the mother, respondent had never provided a home or support for the child. Moreover, he had been in and out of jail. The trial court authorized the petition and ordered the child be placed into protective custody. The child was placed in the home of fictive kin via his prior dating relationship with mother and he immediately took the necessary steps to become a foster care provider.

A mental health assessment revealed that respondent admitted to a history of drug use, including alcohol and marijuana use beginning at age nine, cocaine use beginning at age 15, and heroin use intravenously, beginning at age 17. After respondent dropped out of high school, he had a long history of incarcerations for domestic violence and drug abuse crimes. Although respondent had multiple convictions for domestic violence, he claimed that there was no physical violence involved; it was all "verbal," and he did not admit responsibility.

Respondent met the mother while they were using heroin together, which essentially became their lifestyle. After the child's birth, respondent served additional jail terms for drug possession and use. The record showed intermittent periods when respondent abstained from drug use before relapsing. Respondent's longest period of sobriety was 22 months before he relapsed in 2015. As a result of respondent's addiction, his employment history was intermittent.

In October 2019, respondent was offered reunification services. On November 29, 2019, respondent pleaded no contest to the allegations in the petition. Respondent agreed to a parent-agency treatment plan (PATP) that required parenting classes, a substance-abuse assessment, drug screens, a psychological evaluation, anger management and domestic violence assessments, follow-through on referrals and recommendations, maintaining contact with DHHS, no contact with any "individuals detrimental to reunification," a legal income, and appropriate and safe housing. A clinician recommended that respondent participate in domestic violence counseling

---

[3] In his brief on appeal, respondent raised the issue that a guardianship would have been a better option. But the referee authorized the petition for termination and petitioner demonstrated that termination of respondent's parental rights and adoption was in the child's best interests. See MCL 712A.19a(9)(c) and MCL 722.873(1)(c). Indeed, at the best-interests hearing, the child's foster father testified regarding his preference for adoption over guardianship in light of respondent's history, including his failure to remain in contact with the child.

and in Alcoholics Anonymous (AA)/Narcotics Anonymous (NA) to remain substance-free. Respondent completed the psychological evaluation and was diagnosed with adult antisocial behavior, child neglect, alcohol use disorder, and drug use, including opioids and cocaine. The psychologist recommended that respondent complete drug testing and substance-abuse treatment.

At a hearing in February 2020, it was reported that respondent was participating in the PATP requirements, including assessments, drug screens, and treatments. Respondent attended two supervised visitations in the foster home that went well. He then requested and was permitted to set up a supervised visit at a cider mill; however, he canceled that visit.

At a hearing in May 2020, and in subsequent hearings, it was reported that respondent was not compliant with the PATP. His whereabouts were unknown and he failed to maintain contact or attend the court hearings.

Rather than working to obtain custody of the child, respondent disappeared numerous times and did not comply with his PATP or complete any services. While out of jail, respondent could not be located from mid-March to July 2020, from August 2020 until October 2020, and from October or November 2020 until April 2021, when DHHS learned that respondent was back in jail. When out of jail, respondent continued to reside in the home that he knew was unsuitable for reunification.

Rather than participating in services and working toward reunification by maintaining contact with DHHS, finding employment and suitable housing, and setting up visitation with the child, respondent violated his parole requirements and added new crimes to his record. He was charged with traffic and weapons offenses as well as aggravated indecent exposure. He absconded from probation on August 25, 2020, and had three active warrants, including a warrant for domestic violence and "assault or battery on a pregnant individual." In September 2020, respondent was charged with domestic violence and knowingly assaulting a pregnant person for an incident with his girlfriend in addition to substance-abuse crimes, including possession of methamphetamine, manufacturing methamphetamine, and maintaining a drug house. He pleaded guilty and was convicted of aggravated indecent exposure, manufacturing methamphetamine, possession of methamphetamine, and maintaining a drug house.

On September 22, 2020, DHHS filed a supplemental petition to terminate respondent's parental rights to the child for failure to participate in services. The trial court authorized the petition.

The hearing on the petition to terminate respondent's parental rights was held on October 18, 2021, before a referee. At that point, the child was eleven years old. Respondent was 42 years old and he had been in jail for seven months awaiting sentencing on his convictions for aggravated indecent exposure, manufacturing methamphetamine, possession of methamphetamine, and maintaining a drug house.

At the hearing, the worker testified that the child consistently told him throughout the pendency of the case that she was happy where she was and wanted to live with her foster family. She was doing well in school and had made friends. She did not want to go back to either parent.

She had never lived with respondent or spent very much time with him, and she expressed concern about being placed with him.

While incarcerated for seven months before the termination hearing, respondent had become drug-free and had been phoning the child twice a month. The worker and the foster father both testified that the child enjoyed talking to respondent, but did not initiate the calls and did not want to talk with him at times; however, she did not refuse to speak with him when he called. The foster father stated that, whatever the outcome of the hearing, he would always be willing to let respondent communicate with the child. The foster father stated that there had never been an "ongoing relationship" between respondent and the child, but the child knew respondent was her legal father. The worker and foster father both believed that there was no bond between respondent and the child and opined that termination of respondent's parental rights would be in the child's best interests.

At the hearing, respondent blamed his noncompliance with his PATP on being in jail for much of the time, not having a car to get to the services, and the pandemic closing services. Yet, the record shows that the only service that shut down completely during the pandemic was the drug-testing facility, which was closed from March through June of 2020. All the other services continued through Zoom or other virtual means.

Respondent testified that he had now been clean for seven months and believed that he could continue to stay clean. His incarceration allowed him to read self-help books and attend AA meetings. Although he had pleaded guilty to obtain a reduced sentence, he had not yet been sentenced. Respondent explained that his recommended minimum sentence guidelines range was 5 to 46 months, but he believed that he would receive a sentence of one year or less. He further believed that he would be released on a tether, placed on probation, and begin working on his PATP. He hoped to live in a "three-quarter house" for six months to a year. He planned to go back to work, maintain a sober life by engaging in continuous substance-abuse counseling, maintain continuous contact with the child, and participate in family counseling. Until then, he would be fine with a guardianship.

Respondent agreed that, under his timeline, he would not be ready to parent the child for another year and a half, at the least. Because of his history of "sober, relapse, sober, relapse," respondent was asked what assurances he could provide the court that he had changed. Respondent replied that he could not give the court "assurances," but he wanted the child in his life and he did not want to spend the rest of his life in jail. Respondent had struggled with drug addiction for most of his life. He would "strive every day" to do better and be a father to the child. He wanted "to do whatever it takes to stay sober and be a good parent." Even so, respondent recognized that during the last two years, he spent a significant amount of time on drugs and committing felonies.

After the parties' closing arguments, the referee found clear and convincing evidence to support termination under MCL 712A.19b(3)(c)(*i*) (the conditions that led to the adjudication continue to exist and no reasonable likelihood that they would be rectified within a reasonable time considering the child's age), (c)(*ii*) (other conditions exist, the parent received recommendations to rectify those conditions, the conditions were not rectified and there is no reasonable likelihood that the conditions would be rectified within a reasonable time considering the child's age), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood based on the parent's

conduct or capacity of harm to the child if returned). But, regarding the best interests of the child, the referee found that the preponderance of the evidence established that there was a relationship between respondent and the child and that they "both benefit from that." The referee found the evidence showed that the child looked forward to the conversations with respondent and that respondent "definitely" looked forward to maintaining a relationship with the child. The referee found that there was "no testimony whatsoever" that maintaining the relationship between respondent and the child would "at all be detrimental to her," and that the testimony showed that maintaining the relationship with respondent would be a benefit to her. The referee then determined that termination of respondent's parental rights would not be in the best interests of the child.

DHHS requested a review of the referee's recommendation and argued that the referee clearly erred. The circuit court affirmed the referee's recommendation and thereafter signed the referee's recommendation that termination of respondent's parental rights was not in the child's best interests, and therefore, denied DHHS's supplemental petition to terminate respondent's parental rights. This Court granted petitioner's delayed application for leave to appeal, and after the additional proceedings already described, this case was resubmitted for decision.

## II. BEST INTERESTS

On appeal, DHHS argues that the trial court clearly erred by finding that termination of respondent's parental rights to the child was not in the child's best interests. We agree.

MCL 712A.19b(5) provides:

> If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's findings of fact in a termination hearing, including whether termination of parental rights is in the best interests of the child, are reviewed for clear error. *In re Pederson*, 331 Mich App 445, 476; 951 NW2d 704 (2020). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (quotation marks and citation omitted). See also *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018).

In determining the child's best interests, the trial court must weigh the evidence available on the whole record. *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000). The court may

consider the factors contained in MCL 722.23,[4] *In Re McCarthy*, 497 Mich 1035; 864 NW2d 139 (2015), "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other considerations include the length of time the child has been in foster care or placed with relatives, the likelihood "that the child could be returned to [the] parent's home within the foreseeable future, if at all[,]" and the parent's compliance with the case service plan, *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). A court may also consider a parent's history of domestic violence, the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption. *In re Pederson*, 331 Mich App at 476 (quotation marks and citation omitted). In *In re Moss*, 301 Mich App at 88-89, this Court explained:

> [O]nce a statutory ground for termination is established, i.e., the parent has been found unfit, the focus shifts to the child and the issue is whether parental rights *should* be terminated, not whether they *can* be terminated. Accordingly, at the best-

---

[4] MCL 722.23 provides:

> As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:
> (a) The love, affection, and other emotional ties existing between the parties involved and the child.
> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.
> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.
> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
> (f) The moral fitness of the parties involved.
> (g) The mental and physical health of the parties involved.
> (h) The home, school, and community record of the child.
> (i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.
> (j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.
> (k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.
> (*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

interest stage, the child's interest in a normal family home is superior to any interest the parent has. [Emphasis in original.]

In this case, the referee "took judicial notice of the file from all prior proceedings, as well as the testimony that was credibly received this date." But our review of the record shows that the referee did not weigh the evidence available on the whole record in determining the child's best interests and failed to consider that the child's interest in a normal family home was superior to any interest respondent had. Instead, the referee seemed to base her decision on the child engaging in a couple of telephone calls a month with respondent.

The referee made no mention of other factors and did not reference other testimony or documents in the record. The referee did not consider respondent's parenting ability, including respondent's failure to complete parenting classes and his absences from her life, including his disappearances and incarcerations. The referee did not consider the advantages of the foster home over what respondent could provide. More specifically, the referee did not consider that the then 11-year-old child had been in a foster home for more than two years, that she loved it there, and that the foster father wanted to adopt her. Respondent, on the hand, predicted that it would be at least another eighteen months before he could complete rehabilitation and provide a home for the child. The referee not only failed to address the child's need for permanency or stability, but also her stated preference not to live with respondent. The referee also failed to consider respondent's history of domestic violence as well as respondent's failure to successfully address his anger issues or his substance-abuse issues. Indeed, the referee did not consider that the only time respondent had remained drug-free for any significant amount of time was when he was incarcerated. Moreover, there is no indication that the referee considered the fact that respondent had continued to engage in criminal behavior, including a weapons charge and a conviction of aggravated indecent exposure. Along with respondent's long-term substance abuse and domestic violence, a conviction of aggravated indecent exposure would be relevant to deciding what was in the child's best interests.

The referee took no notice of the child's history of abuse while in her mother's care. Mother's parental rights to another child were terminated for medical neglect and mother's abuse in this case involved having the child at issue consume controlled substances to provide her with drug-test samples. Throughout the child's time with mother, respondent was not there for the child because of his drug addiction and incarcerations.

For the previous two years, the child had been in a foster home where she felt loved, safe, and secure. In that environment, she was doing well academically and socially.

On this record, we disagree that there was "no testimony whatsoever" that maintaining a relationship with respondent would be detrimental to the child, but would be "a benefit to her." And we conclude that the referee and trial court clearly erred because we are left with a definite and firm conviction that a mistake has been made regarding the best-interests determination. We

-7-

vacate the trial court's order in part and remand for further proceedings on the child's best interests.[5]

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel

---

[5] Respondent asks that we remand for not only a continued best-interests hearing, but also his fitness as a parent because the order that petitioner appealed addressed both. While this appeal was pending, respondent filed a cross appeal, challenging the order terminating his parental rights. We note that in March 2023, respondent filed a motion to remand to the trial court "for an updated evidentiary hearing" on his parental fitness because 18 months had passed since the issuance of the order appealed from, the information relied upon was now outdated, and the contention that he had made progress toward reunification while incarcerated. DHHS opposed the motion. In May 2023, respondent filed a stipulation to dismiss his cross appeal "[b]ecause [he had] raised all the relevant issues to this appeal in his answer to the [petitioner's] [b]rief." Thereafter, this Court denied respondent's remand request without prejudice to this panel determining that remand was necessary. *In re J V Locricchio*, unpublished order of the Court of Appeals, entered June 1, 2023 (Docket No. 359738). Even if respondent's cross appeal challenging the finding of unfitness had not been dismissed, we recognize that the question of the appropriate remedy remains. Respondent asserts that he will present updated information showing he has made progress on his treatment plan and developed his bond with the child during his incarceration. However, we decline respondent's invitation as the sole issue on appeal is DHHS's challenge to the referee's best interests determination and resultant conclusion that termination was not warranted. There was no challenge to the referee's recommendation that statutory grounds for termination of respondent's parental rights existed and there is no reason to remand regarding that determination.

-8-